PeaRsoN,
 
 J-.
 

 One has a right to sell his property at any time, until a lien is created by force of an execution. But when a debtor finds that he is hopelessly insolvent, although he still has the power to sell and otherwise dispose of his property for the purpose of discharging his debts, he is required •to act with perfect honesty and fairness, and to dispose of the property with a single eye to the benefit of his creditors; lie is at liberty to make a preference among them, if he sees proper, but it must be a disinterested preference, and any stipulation for his own benefit, or of a member of his family, or of a stranger who has no claims as a creditor, will vitiate the transaction.
 
 Rea
 
 v.
 
 Alexander,
 
 5 Ire. 634.
 
 Hardy
 
 v.
 
 Simpson,
 
 13 Ire. 132.
 

 We see no error in the general remarks set out in the charge, but we think the defendants had a right to insist that his Hon- or should be more specific, and that he ought to have charged that the father, being upon the eve of bankruptcy, the son being a
 
 minor,
 
 and with no means, the transfer to the son without taking any security, except his mere promise to pay off the debts of the Gold Hill concern, and his notes at one, two and three years for the amount agreed on between themselves,
 
 *449
 
 was a violation of the rights of creditors and made the transaction void.
 

 Had the father executed a gift of all this property to the son, it is yielded that the gift would be void as against creditors, and in
 
 legal
 
 contemplation, there is no difference between making a gift and letting a
 
 minor
 
 have property without surety, or other means of compelling the performance of the stipulations on the part of the minor, which can be made available, either in a court of law or of equity. The father in self-justification may say, “I had entire confidence in my
 
 son’s
 
 honor, and believed it best for the creditors to let him go on with the management of that concern, and certainly I had a right to give him his own time.” All this is no doubt true, but the creditors will say, “ we don’t choose to trust to the honor of
 
 any one,
 
 and under existing circumstances, if we were disposed to do so, we could hardly be expected to aslc you to make the selection for us,” and might be allowed to say besides, “ this interferes with our legal rights; the fact of your selecting your son and putting in his power and control, a fund, to which we have the legal right to resort for our debts, may not be as entirely disinterested on your part as might at first sight appear, as it will keep him in business for a few years at least.” But apart from this, we put the rights of the creditors on the broad ground, that the debtor had no right to transfer his property to one whom the law does not consider responsible, and against whom it gives no remedy.
 

 The arrangement which McCorkle attempted to make in regard to the Gold Hill store, may have been a judicious one, and we suppose the jury thought it fairly meant by him, so as to come under the general terms “fair and honest,” used in the charge, which in this point of view had a tendency to mislead, because these defendants, as creditors, had put themselves upon their legal rights, and the transfer of the property by their debtor was void as to them.
 

 It is stated in the case, that Hammond, one of the defendants, upon being consulted before the arraugement was concluded, assented to it, and that the son’s notes were inserted
 
 *450
 
 in the deed of trust as a part of the fund. How far this consideration may affect Hammond, or the other defendants, is not now the question; it was calculated however to mislead, as are several other matters, set out in the case, which had no bearing upon the legal rights of the parties. There is error.
 

 Per Curiam. '
 
 Venire de novo.